UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRYANT EBRON | : | CIVIL NO. 3:25-CV-00363 (SRU) |
| V. | : | |
| ZACCAGNINI, ET AL. | : | SEPTEMBER 23, 2026 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants Zaccagnini, Berry, Chance, Pohl, Turner, Smith-Palmieri, Rodriguez, Cizauskas, Keays, and Tsarkov (collectively, "Defendants"), hereby submit this memorandum of law in support of their motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), (ECF No. 22). As detailed herein, the sole claim in Plaintiff's SAC, a Fourteenth Amendment Equal Protection Clause claim seeking declaratory and injunctive relief, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. For the reasons set forth below, Defendants' motion to dismiss should be granted and the SAC should be dismissed.

## I. RELEVANT FACTUAL ALLEGATIONS

Plaintiff was born on November 30, 1982, and he is currently forty-three (43) years of age. (ECF No. 22, ¶¶ 9, 41). He committed his underlying offense on November 18, 2003.[1] (*Id.* at ¶ 48). At the time of his underlying offense, Plaintiff was twenty (20) years old. (*Id.* at ¶ 49). Plaintiff was sentenced on March 27, 2007, to thirty-two (32) years' incarceration, which was later adjusted to twenty-seven (27) years' incarceration. (*Id.* at ¶¶ 50-51). Defendants are alleged to be the chairperson (Zaccagnini) or members (Berry, Chance, Pohl, Turner, Smith-Palmieri, Rodriguez, Cizauskas, Keays, and Tsarkov) of the Connecticut Board of Pardons and Parole ("BOPP"). (*Id.* at ¶¶ 11-12). Each Defendant is sued in their official capacity only. (*Id.* at ¶ 13).

[1] Although not alleged in the SAC, Plaintiff was convicted, after a jury trial, "of intentional manslaughter with a firearm in violation of [Conn. Gen. Stat.] § 53a-55a(a)." *Ebron v. Warden*, No. TSR-CV09-4003029-S, 2012 Conn. Super. LEXIS 212, at *3 (Conn. Super. Ct. Jan. 20, 2012).

On June 28, 2023, Connecticut Public Act ("P.A.") 23-169 was signed into law by Governor Lamont. (*Id.* at ¶ 26). Effective October 1, 2023, P.A. 23-169 amended the Connecticut statute concerning inmate parole eligibility, Conn. Gen. Stat. § 54-125a, by adding, *inter alia*, section 54-125a(g)(1). (*Id.* at ¶¶ 24-27). Conn. Gen. Stat. § 54-125a(g)(1) and (2) provide the following:

> (1) Notwithstanding the provisions of subsections (a) to (f), inclusive, of this section, a person convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (f), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.
>
> (2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under twenty-one years of age. Any portion of a sentence that is based on a crime or crimes committed while a person was twenty-one years of age or older, shall be subject to the applicable parole eligibility, suitability and release rules set forth in subsections (a) to (e), inclusive, of this section.

Conn. Gen. Stat. § 54-125a(g)(1)-(2); *see also* (ECF No. 22, ¶¶ 24-27).

Under Conn. Gen. Stat. § 54-125a(g)(1), as amended by P.A. 23-169, Plaintiff is ineligible for youth-based parole due to being sentenced after October 1, 2005. (ECF No. 22, ¶¶ 27, 57). Indeed, Plaintiff claims that "[h]e cannot present his [parole] application to BOPP for the sole reason that he was sentenced after October 1, 2005." (*Id.* at ¶ 40); *see also* (*Id.* at ¶ 57) ("Mr. Ebron is ineligible for youth-based parole for the sole reason that he was not sentenced until March 2007."). Plaintiff claims that "[t]here is no rational basis for P.A. 23-169's sentencing date cut-

off," and that "P.A. 23-169's October 1, 2005, sentencing date cut-off violates [Plaintiff's] rights under the Equal Protection Clause of the Fourteenth Amendment." (*Id.* at ¶¶ 30, 58). Specifically, Plaintiff asserts that "P.A. 23-169 creates two groups: (1) those sentenced before October 1, 2005, and (2) those sentenced afterward," and that by doing so, "P.A. 23-169 discriminates against individuals who committed crimes under the age of twenty-one and before October 1, 2005, but were sentenced thereafter." (*Id.* at ¶¶ 59-60). As relief, Plaintiff asks this Court to "[d]eclare that the Conn. Gen. Stat. § 54-125a(g)(1) sentencing date cut-off violates the Fourteenth Amendment to the United States Constitution" and "[p]ermanantly enjoin Defendants from enforcing § 54-125a(g)(1)'s sentencing date cut-off." (*Id.* at ¶¶ 63-64).[2]

Defendants now move to dismiss this action for the reasons set forth below.

## II. <u>LEGAL STANDARD – FED. R. CIV. P. 12(b)(6)</u>

Fed. R. Civ. P. 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks & citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint states a plausible entitlement to legal relief, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

---

[2] Plaintiff also seeks "attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. § 1988(b), and other applicable law." (ECF No. 22, ¶ 65).

This "plausibility standard" is guided by "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, the requirement that a court accept as true the allegations in a complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the claim for relief alleged in the complaint must be plausible. *Iqbal*, 556 U.S. at 679. Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III. DISCUSSION

Plaintiff's Fourteenth Amendment Equal Protection Clause claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). First, Plaintiff's allegations fail to state a claim because legislation creating classes of offenders distinguishable only by the date of their sentencing, like Conn. Gen. Stat. § 54-125a(g)(1), satisfies rational basis review and does not violate the Equal Protection Clause. Furthermore, although not specifically alleged in the SAC, to the extent that Plaintiff attempts to a raise a "class of one" equal protection claim here, such a claim fails for the additional reason that Plaintiff cannot be a "class of one" as he is being treated the same as his closest comparators. For these reasons, as more fully discussed below, the SAC fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Fourteenth Amendment Equal Protection Clause.

To state an equal protection claim, Plaintiff must allege facts establishing that: (1) he was treated differently from similarly situated individuals, and (2) the difference in treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of*

*Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

In the equal protection context, "[t]he highest level of constitutional scrutiny is applied to 'those law that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion.'" *Cinicola v. Lamont*, No. 3:25-CV-493 (VDO), 2026 U.S. Dist. LEXIS 592, at *12 (D. Conn. Jan. 5, 2026) (quoting *Pederson v. Off. Of Pers. Mgmt.,* 881 F. Supp.2d 294, 309 (D. Conn. 2012)). "If the law does not implicate a fundamental right or target a suspect class, the law will survive constitutional scrutiny 'so long as it bears a rational relation to some legitimate end.'" *Id.* at *12-13 (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)); *see also Wright v. Malloy*, No. 3:16-CV-1179 (SRU), 2016 U.S. Dist. LEXIS 168165, at *12 (D. Conn. Dec. 6, 2016) (noting that where no suspect class or fundamental right are at issue, the court "must determine only whether there is a rational relationship between the state statute and a legitimate state objective") (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993)).

Here, Plaintiff does not allege that he is being targeted because he is a member of a suspect class or that the challenged law—Conn. Gen. Stat. § 54-125a(g)(1)—implicates a fundamental right. Nor could Plaintiff, as "prisoners are not a suspect class," *Wright*, 2016 U.S. Dist. LEXIS 168165, at *12, and "[t]he statute Plaintiff challenges implicates an inmate's parole eligibility, which is not a fundamental right." *Cinicola*, 2026 U.S. Dist. LEXIS 592, at *13 (citing cases). Therefore, "[b]ecause § 54-125a(g) does not implicate a fundamental right or target a suspect class, it is subject to rational basis review." *Id.* (citing *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 314 (1976)); *see also Armour v. Governor Lamont*, No. 3:23-CV-1606 (MPS), 2024 U.S. Dist. LEXIS 168101, at *15 (D. Conn. Sept. 18, 2024) (applying rational basis review to similar challenge to Conn. Gen. Stat. § 54-125a(g)). In fact, Plaintiff agrees that rational basis review

applies to his instant equal protection challenge. *See, e.g.,* (ECF No. 22, ¶ 6) ("Such patently arbitrary line drawing fails rational basis review."); (*Id.* at ¶ 30) ("There is no rational basis for P.A. 23-169's sentencing date cut-off."); (*Id.* at ¶ 62) ("P.A. 23-169's sentencing date cut-off has no rational relationship to any legitimate government interest.").

"Under the rational basis test, the 'statute is presumed to be valid and will be sustained if the classification is rationally related to a legitimate state interest.'" *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) (quoting *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 81 (1988)). "The rationale for the statute need not be articulated by the legislature," as "[i]t is sufficient 'if there is any reasonably conceived state of facts that could provide a rational basis for the classification.'" *Wright,* 2016 U.S. Dist. LEXIS 168165, at *12 (quoting *Heller*, 509 U.S. at 320); *Spavone v. N.Y. State Dep't of Corr. Servs.,* 719 F.3d 127, 136-38 (2d Cir. 2013). "Rational basis review is highly deferential to the right of the government to treat people differently." *Bazemore v. Otero*, No. 3:19-CV-496 (JAM), 2020 U.S. Dist. LEXIS 36884, at *9 (D. Conn. Mar. 2, 2020). Notably, "[w]hen a law is subject to rational basis review, the challenging party has the burden to disprove 'every conceivable basis which might support it.'" *Cinicola*, 2026 U.S. Dist. LEXIS 592, at *13 (quoting *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012)). Moreover, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Communications*, 508 U.S. 307, 315 (1993) (citing cases). As detailed below, Conn. Gen. Stat. § 54-125a(g)(1) plainly satisfies rational basis review.

1. **Legislation creating classes of offenders distinguishable only by their date of sentencing does not violate the Equal Protection Clause.**

As Justice Oliver Wendell Holmes noted over a century ago, "the Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between

the rights of an earlier and later time." *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911). And "[a]s the Supreme Court has recognized, 'most laws differentiate in some fashion between classes of persons,' and 'the Equal Protection Clause does not forbid classifications,' but 'simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.'" *Bazemore*, 2020 U.S. Dist. LEXIS 36884, at *9 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also New Orleans v. Dukes*, 427 U.S. 297, 304 n.5 (1976) ("Statutes create many classifications which do not deny equal protection; it is only invidious discrimination which offends the Constitution.").

Applying rational basis, the Second Circuit and Circuit Courts across the country have found that legislation, like that challenged here, that creates "classes of offenders distinguishable by only the date of offense, conviction, plea, or sentencing" does not violate the Equal Protection Clause. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 504-05 (6th Cir. 2007) (collecting cases); *see also Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983) (upholding statute that conditioned ability to receive increased good time credits on sentencing date, thereby creating two classes of offenders: those sentenced prior to October 1, 1976, and those sentenced after that date), *cert. denied*, 464 U.S. 934 (1983); *Foster v. Washington State Bd. of Prison Terms & Parole*, 878 F.2d 1233, 1235 (9th Cir. 1989) ("There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system.") (citation omitted); *Huggins v. Isenbarger*, 798 F.2d 203, 207 (7th Cir. 1986) ("It does not violate the equal protection clause to require people sentenced before 1977 [date of statutory change] to serve out their sentences under the system that was in place when they committed their crimes."). And as the First and Seventh Circuits observed, "discrepancies among persons who committed similar crimes are inescapable whenever Congress

raises or lowers the penalties for an offense" and "[m]ost often, the dividing line is the date of the crime." *United States v. Goncalves*, 642 F.3d 245, 253 (1st Cir. 2011); *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011) (same and noting that "[s]omeone, in the end, will always be left behind to live with the earlier, harsher penalty, whenever Congress chooses to amend a sentencing statute" and that "[w]hatever arbitrariness there may be is therefore unavoidable").

Here, Plaintiff complains that the 2023 legislative change to Conn. Gen. Stat. § 54-125a(g), through P.A 23-169, violates the Equal Protection Clause because it creates two classes of offenders based on the date of their sentencing; however, as just noted, that is precisely the type of equal protection claim that has been repeatedly rejected by courts across the country. In fact, courts within this District have recently rejected similar or identical equal protection challenges to the 2023 legislative change to Conn. Gen. Stat. § 54-125a(g) that Plaintiff raises here. *See, e.g., Armour v. Governor Lamont*, No. 3:23-CV-1606 (MPS), 2024 U.S. Dist. LEXIS 168101, at *15 (D. Conn. Sept. 18, 2024) (concluding "that there is a rational basis for 'creating two classes of offenders distinguishable by only the date of offense' in P.A. 23-169," and dismissing equal protection claim pursuant to, *inter alia*, Fed. R. Civ. P. 12(b)(6)); *Cinicola v. Lamont*, No. 3:25-CV-493 (VDO), 2026 U.S. Dist. LEXIS 592, at *12 (D. Conn. Jan. 5, 2026) (dismissing on initial review an inmate's equal protection challenge to Conn. Gen. Stat. § 54-125a(g)).

In addition to the plethora of cases supporting dismissal of Plaintiff's instant equal protection claim, there are several rational bases supporting the distinction in the statute at issue. For instance, the statute's sentencing date distinction is reasonably related to providing offenders who committed their crimes at a younger age (21 or under) and were sentenced to lengthy terms of incarceration under older (pre-October 1, 2005) and harsher sentencing schemes, an earlier opportunity for parole release and thereby an ability to reduce or "improve" their term of

incarceration. "Improvement in sentencing is a rational governmental purpose." *Foster*, 878 F.2d at 1235 (citing *Mistretta v. United States*, 488 U.S. 361 (1989); *see also Vickers v. Dzurenda*, 134 Nev. 747, 751 (2018) ("[E]stablishing the time an offender must spend in prison is a rational government purpose.") (citation omitted). It also serves the purpose of advancing public safety goals by providing offenders who are deemed to be rehabilitated and no longer a threat by the parole board, an opportunity to be released earlier, which serves the dual purpose of reducing the prison population of offenders who fit that criteria, while also ensuring that those offenders who do not meet that criteria remain incarcerated in accordance with their original sentences. *See Doe*, 490 F.3d at 505 (upholding legislation that "advance[s] public safety goals while simultaneously 'weeding out' those [offenders] who have been deemed least likely to reoffend").

And to the extent that Plaintiff alleges or argues that these rationales support extending the provision of the statute to him or to offenders who were sentenced at later dates than covered by the statute, *see, e.g.,* (ECF No. 22, ¶¶ 31-39), such an argument does not alter the conclusion. Indeed, "[t]he legislature's 'gradual approach is not constitutionally impermissible'" and "'a statute is not invalid under the Constitution because it might have gone farther than it did.'" *Doe*, 490 F.3d at 505 (quoting *Dukes*, 427 U.S. at 305); *see also Hegney v. Vail*, 357 Fed. Appx. 1, 3 (9th Cir. 2009) ("[T]he state legislature had a rational basis to improve it sentencing scheme gradually.") (citing cases); *State v. Nguyen*, 185 Ariz. 151, 154 (1996) ("[I]t is rational for the government to tackle only the worst aspects of a problem" and "[g]overnments make such distinctions routinely – and constitutionally – in areas such as public assistance, where lines are drawn between those who are most needy and those who are less so"). Importantly, the Supreme Court has repeatedly observed in the rational-basis review context that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made

in areas[,] [such as here,] that neither affect fundamental rights nor proceed along suspect lines."[3] *Dukes*, 427 U.S. at 303 (citation omitted); *see also Heller*, 509 U.S. at 319 ("We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'") (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)). Therefore, the Court should reject any such argument or invitation by Plaintiff to engage in such improper judgment or questioning of legislative policy determinations.[4] *See, e.g., Beach Communications*, 508 U.S. at 315 (emphasizing that "restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing.") (internal quotation marks & citation omitted); *Doe*, 490 F.3d at 504 (noting that the determination of when a new statutory scheme takes effect is the "kind of line-drawing [that] is the province of the legislature") (citation omitted).

Finally, it is also worth noting that there is no logical difference between Plaintiff's situation and the situation an offender faces after the legislature reclassifies the crime they were convicted of and sentenced on at a lower level with a decreased sentence. A person sentenced before the change takes effect faces a longer sentence as compared to someone sentenced after the change, even though their crimes may be identical. Such a change does not create an equal

---

[3] And to the extent that Plaintiff seeks to rely on some hodgepodge or selective set of sentencing or prison population data to support his claim, *see, e.g.,* (ECF No. 22, ¶¶ 35-38), that also is irrelevant and does not alter the conclusion. Indeed, as previously noted, the Supreme Court has stated that "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315 (citing cases); *Heller*, 509 U.S. at 320 (same).

[4] In addition to this clear edict from the Supreme Court, it is worth noting that the Connecticut General Assembly has been considering expanding the parole eligibility provisions of Conn. Gen. Stat. § 54-125(a)(g)(1) to offenders who were under the age of twenty-six (26), which would encompass Plaintiff. This only further supports why this Court cannot and should not invalidate Conn. Gen. Stat. § 54-125a(g)(1) based on any legislative line drawing, as "[t]his kind of line-drawing . . . is the province of the legislature." *Doe*, 490 F.3d at 504 (citation omitted).

protection violation, otherwise legislatures would never be able to change sentencing schemes, even if a change may benefit future offenders. *See, e.g., Doe*, 490 F.3d at 504 ("Legislation must, of necessity, take effect on some specific date" and legislatures frequently "modify their statutory schemes to the benefit of the accused or convicted . . . . thereby creating two classes of offenders distinguishable only by the date of . . . sentencing").[5] Just as that is allowable, so too was the 2023 change that the General Assembly made to Conn. Gen. Stat. § 54-125a(g)(1) in this instance.

Accordingly, Plaintiff's Fourteenth Amendment Equal Protection Clause claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**2. Plaintiff cannot maintain a "class of one" equal protection claim.**

Although Plaintiff does not seemingly allege or advance an equal protection claim based on a theory that he has been irrationally singled out as a "class of one," even if he had advanced such a claim, it would fail. Indeed, any "class of one" equal protection claim would fail here not only for the reasons previously stated—namely that the 2023 change to Conn. Gen. Stat. § 54-125a(g)(1) satisfies rational basis review—but also because Plaintiff cannot be a "class of one" as he is being treated the same as his closest comparators.

To prevail on such a theory, "class-of-one plaintiffs must show an *extremely high degree* of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (emphasis added) (citation omitted). "The similarly-situated comparator must be 'prima facie identical' to the plaintiff[,]'" *Green v. Semple*, 811 Fed. Appx. 706, 707 (2d Cir. 2020) (summary order) (quoting *Hu v. City of New York*, 927

[5] In other words, if one were to follow Plaintiff's position to its logical conclusion, there would be no equal protection violation if Conn. Gen. Stat. § 54-125a(g)(1) never existed or if it was repealed; however, as Plaintiff concedes, Conn. Gen. Stat. § 54-125a(g)(1) plainly benefits other offenders, just not Plaintiff. However, under Plaintiff's view, the legislature would never be able to re-classify offenses or change sentencing schemes, even if it may benefit other offenders.

F.3d 81, 92 (2d Cir. 2019), and "must be similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation omitted). This extremely high degree of similarity is mandated in a class of one claim because "[t]he similarity and equal protection inquiries are . . . virtually one and the same in ... a 'class of one' case." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Here, the subsection of the statute that Plaintiff is challenging states that:

> Notwithstanding the provisions of subsections (a) to (f), inclusive, of this section, a person convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (f), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

Conn. Gen. Stat. § 54-125a(g)(1). By its plain language then, the challenged portion of the statute only applies to people who committed a crime when they were under twenty-one (21) years of age, were sentenced on or before October 1, 2005, and received a sentence of more than ten (10) years. Based on his own allegations, Plaintiff was sentenced on March 27, 2007. (ECF No. 22, ¶ 50). Plaintiff is in the same class as everyone else who committed a crime under the age of twenty-one (21), was sentenced after October 1, 2005, and received a sentence of more than ten (10) years. It is obvious that many individuals fit these criteria, and each one of those people is being treated the same as Plaintiff under the challenged statute. Plaintiff is not being treated differently from his closest comparators; he is being treated the same. He is not a class of one; he is in a class of many.

"By definition, a class of one is not a class of many." *Cordi-Allen v. Conlon*, 494 F.3d 245, 254 (1st Cir. 2007).

And while Plaintiff maintains that he is being treated differently from inmates who were sentenced before October 1, 2005, (ECF No. 22, ¶ 59), it is clear such inmates are not proper comparators as they are *not* "similarly situated in all material respects." *Shumway*, 118 F.3d at 64. Indeed, as Chief Judge Shea recently concluded in rejecting a "class of one" equal protection challenge to the 2023 legislative change to Conn. Gen. Stat. § 54-125a(g), "inmates sentenced before October 1, 2005 are not proper comparators because they may become eligible for parole sooner than inmates sentenced after that date." *Armour*, 2024 U.S. Dist. LEXIS 168101, at *14 (citation omitted). Rather, Plaintiff's "[p]roper comparators [here] are, like Plaintiff, inmates who were sentenced after October 1, 2005." *Id.* And like in *Armour*, "Plaintiff [here] does not maintain that he is being treated differently than this class of prisoner[,]" and "[t]herefore, he cannot establish the first element of a 'class of one' equal protection claim." *Id.* (citation omitted).

The Court should reach the same conclusion here that Chief Judge Shea reached in *Armour*. Moreover, courts within this District have routinely rejected similar "class of one" equal protection claims for precisely this reason, finding that plaintiffs cannot establish that they are "similarly situated in all material respects" to their comparators. *See, e.g., Wright v. Malloy*, No. 3:16-CV-1179 (SRU), 2016 U.S. Dist. LEXIS 168165, at *13-14 (D. Conn. Dec. 6, 2016) (finding plaintiff who challenged parole eligibility statute that "denied him eligibility because he committed murder *after* 1981" was *not* "similarly situated" for equal protection purposes to "inmates who committed qualifying felonies, such as murder, *before* 1981") (emphasis added); *Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 U.S. Dist. LEXIS 76507, at *15 (D. Conn. May 7, 2019) ("If one compares Plaintiff's circumstances with those of Johnny Johnson (inmate # 161684 at Osborn), Plaintiff's

alleged comparator, they are not identical or similarly situated for purposes of application of Public Act 11-52, §§ 22 and 25, due to the commission date of Johnson's offense."), *aff'd*, 811 Fed. Appx. 706 (2d Cir. 2020); *Bazemore*, 2020 U.S. Dist. LEXIS 36884, at *11 (rejecting "class of one" equal protection claim because, *inter alia*, "Bazemore does not allege any facts to show that he has been singled out for disparate treatment—that there are any other offenders who committed their crimes *before* the 2011 law that continue to receive its benefit") (emphasis in original). Likewise, Plaintiff here does not (and cannot) point out any offender who was sentenced after October 1, 2005, and who has been treated differently as to parole eligibility under the challenged statute. Without such a comparator, Plaintiff's "class of one"—to the extent he even asserts such a claim—is fatally flawed and must be dismissed.

## IV. CONCLUSION

**WHEREFORE,** for the foregoing reasons, Plaintiff's SAC fails to state a Fourteenth Amendment Equal Protection Clause claim and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

DEFENDANTS,
ZACCAGNINI, ET AL.

WILLIAM TONG
ATTORNEY GENERAL

BY: ______/s/__________________

Edward D. Rowley (#ct30701)
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5450
E-Mail: Edward.Rowley@ct.gov

**CERTIFICATION**

I hereby certify that on the date first above, a copy of the foregoing was filed electronically. Notice of this filing was sent via U.S. Mail, First Class to the address below and will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

_____/s/__________________
Edward D. Rowley
Assistant Attorney General